# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:22-cr-00028-MR

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Appellee, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| MARVIN MINOR, ) | |
| ) | |
| Defendant/Appellant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court on the Defendant's appeal from the Judgment entered by the Magistrate Judge on April 4, 2022. For the reasons that follow, the Judgment is affirmed.

**I.     PROCEDURAL BACKGROUND**[1]

On July 25, 2020, the Defendant Marvin Minor received three United States District Court Violation Notices charging him with petty offenses through the Central Violations Bureau ("CVB") relative to conduct that occurred on U.S. Highway 441 in the Great Smoky Mountains National Park.

---

[1] This case has an unusually long and protracted procedural history. While a full recounting of that procedural history is not necessary here, the Court will note that the case was delayed in part due to scheduling delays caused by the coronavirus pandemic; scheduling difficulties arising from the fact that the Defendant resides in Mississippi; the appointment and subsequent withdrawal of two attorneys prior to the appointment of the Defendant's present counsel; and issues that were raised regarding the Defendant's competency.

Violation Notice No. 8130660 charged the Defendant with interfering with agency functions in violation of 36 C.F.R. § 2.32(a)(2); Violation Notice No. 8130661 charged the Defendant with open container of alcoholic beverage in violation of 36 C.F.R. § 4.14(b); and Violation Notice No. 8130662 charged the Defendant with disorderly conduct in violation of 36 C.F.R. § 2.34(a)(1). [Doc. 1: Violation Notices].

On March 29, 2022, the Honorable W. Carleton Metcalf, United States Magistrate Judge, conducted a bench trial. [Doc. 9: Transcript of CVB Trial ("Tr.")]. The Government called a single witness, Great Smoky Mountains National Park Law Enforcement Ranger James Westin Mullins ("Ranger Mullins"). [Id. at 10]. The Government also introduced three exhibits into evidence: a video recorded by a body camera worn by Ranger Mullins during his interaction with Defendant (Gov't Ex. 1); a narrow view dash camera video recorded from Ranger Mullins' patrol vehicle (Gov't Ex. 2); and the same dash camera video as depicted in Government's Exhibit 2, except with a wider panoramic view (Gov't Ex. 3). [Id. at 31, 35, 37]. The Defendant recalled Ranger Mullins to the stand and also offered Ranger Mullins' body camera video (Def. Ex. 1) and the narrow view dash camera video (Def. Ex. 2) as evidence. [Id. at 74, 80]. At the conclusion of the evidence and the presentation of arguments by counsel, Judge Metcalf found the Defendant

2

guilty of all three violations. [Id. at 104-05]. Prior to imposing judgment, Judge Metcalf gave the Defendant an opportunity to allocute and for counsel to present arguments regarding the appropriate sentence. [Id. at 105-09]. Considering all of the evidence presented, as well as the 18 U.S.C. § 3553(a) factors, Judge Metcalf sentenced the Defendant to 120 days' imprisonment. [Doc. 2-1: Judgment]. This appeal followed. [Doc. 2].

## II. STANDARD OF REVIEW

An appeal of a judgment imposed by a United States magistrate judge is reviewed by this Court using the same standards as are applied by the Court of Appeals in reviewing a district court judgment. See 18 U.S.C. § 3742(h); see also Fed. R. Crim. P. 58(g)(2)(D) ("The scope of the appeal [of a judgment entered by a magistrate judge] is the same as in an appeal to the court of appeals from a judgment entered by a district judge."). Accordingly, the Court must "assess challenges to the sufficiency of the evidence by viewing it—including all reasonable inferences to be drawn therefrom—in the light most favorable to the Government." United States v. Bursey, 416 F.3d 301, 306 (4th Cir. 2005). Further, the Magistrate Judge's findings of fact are reviewed only for clear error, while his conclusions of law are reviewed *de novo*. United States v. Landersman, 886 F.3d 393, 406 (4th Cir. 2018). The

Court reviews any evidentiary rulings for an abuse of discretion. United States v. Hill, 322 F.3d 301, 304 (4th Cir. 2003).

## III. FACTUAL BACKGROUND

Viewed in the light most favorable to the Government, the evidence adduced at trial established the following facts.

On July 25, 2020, Ranger Mullins was alone on patrol in his marked law enforcement vehicle on Highway 441 within the Great Smoky Mountains National Park. [Tr. at 11-13]. Around 8:00 p.m., while Ranger Mullins was pulling off the road, he noticed a vehicle in his rearview mirror that appeared to be somewhat aggressive when passing, but the Ranger did not respond until another park visitor flagged him down and reported that the vehicle had nearly run them off the road. [Tr. at 12]. In response, Ranger Mullins then decided to pursue and investigate. [Tr. at 13].

Ranger Mullins caught up to the vehicle, a BMW sedan, and followed it for a few miles. [Id.]. The Ranger observed the BMW's driver cross the double yellow line at least twice and veer into another lane of traffic. [Id.; Gov't Ex. 2 at 5:00, 5:44]. Ranger Mullins activated his lights and siren and the driver pulled over. [Tr. at 13]. Traffic conditions were busy during the entirety of the vehicle stop. [Tr. at 116; Gov't Exs. 2 and 3 at 7:00-10:00].

Upon approaching the BMW, Ranger Mullins observed a female driver and a male passenger, later identified as the Defendant. [Tr. at 15-16; Gov't Ex. 1 at 6:45]. Ranger Mullins immediately noticed an open case of Natural Light beer in the floorboard at Defendant's feet. [Tr. at 17]. Ranger Mullins asked the driver whether there were any open cans of beer in the car, and she denied that there were. [Tr. at 19; Gov't Ex. 1 at 7:35-7:40]. However, the Ranger was able to see an open container in the back seat floorboard area. [Tr. at 18; Gov't Ex. 1 at 7:49].

Ranger Mullins became concerned for his safety when the occupants kept reaching into the back passenger area despite being instructed not to do so. [Tr. at 18-20]. The Ranger asked the driver for her license and registration, and both the Defendant and she reached towards the rear passenger area in response. [Gov't Ex. 1 at 7:44]. Ranger Mullins then instructed everyone to stop moving and put their hands back in the front passenger area, but the Defendant did not comply. [Tr. at 18-19; Gov't Ex. 1 at 7:52]. The Defendant declared "I ain't stopping nothing" and retrieved an open can of beer from the rear passenger area, stating "That's my beer." [Tr. at 19; Gov't Ex. 1 at 8:08–8:25]. Ranger Mullins was unable to clearly see what other items were in the rear of the vehicle and Defendant continued to reach into that area after he had been instructed not to do so. [Tr. at 19].

Ranger Mullins testified that in his training and experience, weapons could be stored in the back seat area of a vehicle. [Id.]. After refusing to follow his commands, Ranger Mullins announced that Defendant would need to get out of the car. [Tr. at 20; Gov't Ex. 1 at 8:30]. Ranger Mullins then walked from the driver's window around the front of the car to the front passenger door. [Id.].

The Defendant continued to disregard the Ranger's commands. Defendant opened his door but refused to exit, instead doing something with his phone while ignoring Ranger Mullins. [Tr. at 20; Gov't Ex. 1 at 8:45]. Ranger Mullins twice ordered him to step out. The Defendant held up his index finger, did not look towards Ranger Mullins, and said "I'll get out in a minute" or words to that effect. [Tr. at 20-21; Gov't Ex. 1 at 8:48]. After the third command to step out of the vehicle, the Defendant rose from his seat. [Tr. at 21; Gov't Ex. 1 at 8:53].

After the Defendant exited the vehicle, Ranger Mullins instructed him to turn around and to put his hands behind his back so that he could attempt a Terry[2] frisk for weapons in the manner in which he was trained. [Tr. at 21, 22-23; Gov't Ex. 1 at 8:55]. The Defendant instead placed his hands on top

---

[2] Terry v. Ohio, 392 U.S. 1 (1968).

of the vehicle. [Tr. at 23]. Ranger Mullins repeated his command for Defendant to place his hands behind his back a total of six times, but the Defendant did not comply. [Gov't Ex. 1 at 8:55-9:07]. Ranger Mullins attempted to guide Defendant's left hand behind Defendant's back, but Defendant pulled his hand away and placed it back on top of the vehicle and responded, "for what?" [Gov't Ex. 1 at 8:58-9:00]. Ranger Mullins told Defendant, "I'm frisking you, put your hands behind your back" and Defendant yelled "frisk me" but continued to refuse to put his hands behind his back and instead turned to face Ranger Mullins. [Tr. at 23-24; Gov't Ex. 1 at 8:50-9:00].

Due to the Defendant's non-compliance, Ranger Mullins attempted to take the Defendant to the ground to gain control. [Tr. at 24; Gov't Ex. 3 at 9:05]. Ranger Mullins spun the Defendant to the ground, which was wet and sloping downward at an incline toward a river. [Tr. at 24-25; Gov't Ex. 3 at 9:05-9:30]. Once on the ground, Ranger Mullins attempted to gain control of the Defendant, but the Defendant continued to resist. The Defendant struggled with Ranger Mullins on the ground for approximately 15 seconds while Ranger Mullins continued to command him to place his hands behind his back. [Tr. at 25; Gov't Ex. 3 at 9:09-9:24]. The Defendant thrusted his elbow during the struggle in what appeared to be either an elbow strike at

7

Ranger Mullins' head or an effort to throw the Ranger off him. [Tr. at 26, 38-39, 115; Gov't Ex. 3 at 9:22-9:25]. The Defendant eventually broke free from Ranger Mullins, returned to his feet, and then walked back to the car and placed his hands on the roof. [Tr. at 26; Gov't Ex. 3 at 9:30-9:40]. Ranger Mullins drew his taser and instructed the Defendant again to place his hands behind his back, but the Defendant continued to defy the command. [Tr. at 27; Gov't Ex. 3 at 9:40-15:30]. Ranger Mullins kept his taser drawn for approximately five minutes until backup arrived; the Defendant kept his hands on the roof of the car but refused to place his hands behind his back. [Id.]. Once backup arrived, Ranger Mullins and another ranger were able to move the Defendant's hands behind his back, handcuff him, and frisk him. [Gov't Ex. 3 at 15:30-16:45].

Ranger Mullins later discovered that he had been injured during the struggle, having suffered a hyperextended elbow which caused him to miss a month of work for rehabilitation. [Tr. at 26].

## IV. DISCUSSION

### A. Lawfulness of Ranger Mullins' Commands

The Defendant was convicted of interfering with agency functions, in violation of 36 C.F.R. § 2.32(a)(2), which prohibits "[v]iolating the *lawful order* of a government employee or agent authorized to maintain order and control

8

public access and movement during . . . law enforcement actions . . . ." 36 C.F.R. § 2.32(a)(2) (emphasis added). He was also convicted of disorderly conduct, in violation of 36 C.F.R. § 2.34(a)(1). That regulation provides that "[a] person commits disorderly conduct when, with intent to cause public alarm, nuisance, jeopardy or violence, or knowingly or recklessly creating a risk thereof, such person . . . [e]ngages in fighting or threatening, or in violent behavior." 36 C.F.R. § 2.34(a)(1).

The Defendant challenges the sufficiency of the evidence to support these convictions.[3] [Doc. 13 at 6-14]. Specifically, the Defendant argues that Ranger Mullins' commands during the traffic stop exceeded his constitutional authority, and therefore, the Defendant's resistance to such commands was not unlawful. [Id.].

As the Supreme Court has observed, "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." Michigan v. Long, 463 U.S. 1032, 1047 (1983). "[T]he possibility of a violent encounter stems not from the ordinary reaction of a motorist

---

[3] The Defendant does not appear to contest the sufficiency of the evidence supporting his conviction for having an open container of alcohol in a motor vehicle. As to that offense, the evidence presented at trial establish that there was an open can of beer in the car — the Defendant held it up to the Ranger and said, "That's my beer." [Gov't Ex. 1 at 8:10-8:25]. The Magistrate Judge therefore did not err in finding the Defendant guilty of that offense.

9

Case 1:22-cr-00028-MR Document 16 Filed 08/16/22 Page 9 of 17

stopped for a [traffic] violation, but from the fact that evidence of a more serious crime might be uncovered during the stop." Maryland v. Wilson, 519 U.S. 408, 414 (1997). Recognizing that this danger is only likely to increase when the stopped car contains passengers, the Supreme Court has held that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." Id. at 415. Once the passenger is out the car, the officer may conduct a Terry frisk of the passenger for weapons if the officer has reasonable suspicion that the passenger may be armed and dangerous. Arizona v. Johnson, 555 U.S. 323, 327 (2009). As the Supreme Court has recognized, [t]he risk of harm to both the police and the occupants [of a stopped vehicle] is minimized if the officers routinely exercise unquestioned command of the situation." Wilson, 519 U.S. at 414 (quoting Michigan v. Summers, 452 U.S. 692, 702-03 (1981)).

Here, Ranger Mullins first directed the Defendant to keep his hands visible and to stop reaching into the back of the car. Ranger Mullins testified that he gave this instruction because he was unable to clearly see what other items were in the rear of the vehicle and because, in his training and experience, weapons could be stored in the back seat area of a vehicle. The Defendant offers no case law or argument for why an officer cannot protect his safety in this manner. As one district court has noted, "[i]f a police officer

10

may, in the interest of officer safety, order all occupants out of the vehicle for the duration of the stop without violating the Fourth Amendment, the officer may take a less burdensome precaution to ensure officer safety." United States v. Buzzard, 395 F. Supp. 3d 750, 754 (S.D.W. Va. 2019), aff'd, 1 F.4th 198 (4th Cir.), cert. denied, 142 S. Ct. 728 (2021) (citation omitted). The ranger's instructions to the Defendant to keep his hands visible and to stop reaching into the backseat area was certainly less burdensome than ordering the occupants out of the car and was therefore entirely reasonable.

Despite Ranger Mullins' instruction, the Defendant continued to reach into the backseat area, telling the ranger "I ain't stopping nothing." [Tr. at 19; Gov't Ex. 1 at 8:08-8:25]. Because Ranger Mullins could not see where the Defendant's hands were going or what he was holding, Ranger Mullins became concerned that the Defendant may be in possession of a weapon. This led Ranger Mullins to issue his next command to the Defendant to step out of the vehicle in order to frisk him, a precaution that the Supreme Court has recognized that officers are entitled to take in order to ensure their safety. See Johnson, 555 U.S. at 327; Wilson, 519 U.S. at 415.

The Defendant, however, failed to follow Ranger Mullins' instructions to place his hands behind his back in order to be frisked. When the Defendant forcibly pulled away from the officer and turned toward him,

11

Ranger Mullins elected to take control of the situation by taking him to the ground to secure him.  By this point, Ranger Mullins had observed an open container of alcohol, which the Defendant admitted was his, and the Defendant had failed to obey multiple, lawful commands given by Ranger Mullins.  Thus, Ranger Mullins had probable cause to arrest the Defendant for both the open container violation and the interference with agency functions violation. The Defendant, however, resisted this arrest by throwing an elbow, wrestling with the officer (and injuring him), and ultimately escaping.  Based on the evidence presented, there was more than sufficient evidence to sustain the Defendant's interference with agency functions conviction under 36 C.F.R. § 2.32(a)(2) and his disorderly conduct conviction under 36 C.F.R. § 2.34(a)(1).

In arguing that Ranger Mullins' commands were unlawful, the Defendant cites the recent decision of the Fourth Circuit in United States v. Curry, 965 F.3d 313 (4th Cir. 2020) (en banc).  However, the Defendant's reliance on Curry is misplaced.  In Curry, the issue presented was whether an exigent circumstances exception applied when, as the government in that case conceded, the officers lacked individualized reasonable suspicion to stop a pedestrian and conduct a Terry stop-and-frisk.  Id. at 319.  In the present case, however, the Court is not presented with the issue of whether

12

Case 1:22-cr-00028-MR    Document 16    Filed 08/16/22    Page 12 of 17

exigent circumstances existed to conduct a stop-and-frisk. Here, the Defendant was stopped pursuant to a lawful traffic stop and was ordered out of the car after making furtive hand movements and failing to obey several of the ranger's commands. Ranger Mullins therefore had reasonable suspicion to conduct a Terry frisk to pat the Defendant down for weapons based upon what he observed. Curry, therefore, does not advance the Defendant's argument.

The Defendant argues that Curry stands for the proposition that "police cannot require compliance with commands to citizens which are themselves unconstitutional," thereby implying that Curry holds that a citizen may fight with an officer if he deems that the officer's command to be unlawful. [Doc. 13 at 8]. The Defendant, however, misreads Curry. Even if the Magistrate Judge had determined at trial that Ranger Mullins' attempted frisk of the Defendant was not supported by reasonable suspicion, the remedy would have been the suppression of evidence. It would not have given the Defendant license to violently resist and then fight with the officer. The Defendant still was required to follow the Ranger's instructions for

everyone's safety.  Curry does not permit a person to fight with an officer if he does not agree with the legal basis for the frisk.[4]

In sum, the Court concludes that Ranger Mullins' commands during the traffic stop were lawful, and that there is sufficient evidence to support the Defendant's convictions for interference with agency functions conviction under 36 C.F.R. § 2.32(a)(2) and his disorderly conduct conviction under 36 C.F.R. § 2.34.  The Defendant's first assignment of error, therefore, is overruled.

---

[4] Finally, the Court notes that the Defendant's appellate brief is replete with accusations that the arresting officer and the prosecution in this case are motivated by racial bias. [See Doc. 13 at 2 ("Surprisingly, this did not take place in rural Mississippi in 1955."); at 10-11 ("Mr. Minor urges this court to recognize that when the National Park Police and the Department of Justice claim that Mr. Minor is 'armed and dangerous,' they mean he is black, talked back to the officer, and did not move swiftly enough for Officer Mullins or the prosecutor.") (footnotes omitted); at 16 ("No person in 2022 believes that white motorists suspected of crossing the center line and drinking a beer in the passenger seat would have been treated similarly to Ms. Hughes and Mr. Minor.")].  Having reviewed the testimony of Ranger Mullins, as well as all of the video evidence taken of the scene, the Court concludes that there is nothing in the record to suggest that Ranger Mullins was motivated by any racial animus in his interaction with the Defendant or that the Government's prosecution of this matter is motivated by racial bias.  The Defendant's counsel conceded as much at trial.  [See Tr. at 107-08 ("The officer didn't do anything -- didn't do criminal (inaudible), didn't display any kind of racial bias or anything like that ....")].  Counsel is cautioned that such over-the-top hyperbole has no place in proper briefing, particularly when it is belied by the video record.  Counsel's obligation of candor demands better.

## B.  Reasonableness of Sentence

Next, the Defendant contends that his 120-day sentence is excessive and is greater than necessary to accomplish the objectives of sentencing. [Doc. 13 at 14-16].

The Court reviews the Defendant's sentence under the same deferential standard of review employed by the Court of Appeals and should not reverse the Magistrate Judge's decision unless it is "plainly unreasonable."  18 U.S.C. § 3742(a)(4); see also Fed. R. Crim. P. 58(g)(2)(D).  The sentence imposed must be both procedurally and substantively reasonable.  See United States v. Provance, 944 F.3d 213, 218 (4th Cir. 2019).

Here, the sentence imposed was procedurally reasonable.  In crafting the sentence, Judge Metcalf "made an individualized assessment by applying the relevant 18 U.S.C. § 3553(a) factors to the defendant's specific circumstances."  United States v. Sarratt, 750 F. App'x 213, 214-15 (4th Cir. 2019) (citing United States v. Carter, 566 F.3d 325, 328 (4th Cir. 2009)).  The Defendant was permitted to address the court, and Judge Metcalf considered and discussed on the record all the arguments raised by the defense.

15

As for substantive reasonableness, the sentence was less than 25% of the possible maximum sentence of 18 months[5] for the three convictions, and Judge Metcalf adequately explained the reasons for his judgment on the record. The court properly found the Defendant defied multiple commands and noted that "persons who are in that circumstance cannot decide on their own which commands to obey and which commands they can't." [Tr. at 114]. Ranger Mullins was injured during the struggle and missed work for 30 days. [Tr. at 115]. He also was working alone far from backup, and the road was busy where the altercation occurred. [Tr. at 116-17]. Judge Metcalf considered, but rejected as incredible, the Defendant's suggestions that he did not understand the commands being issued to him. [Tr. at 113-14]. Judge Metcalf also observed that the sentence imposed reflected the need for both specific and general deterrence. [Tr. at 117]. Considering all the circumstances, the Court concludes that the sentence imposed was substantively reasonable. The Court therefore affirms the sentence imposed.

---

[5] The Defendant was subject to a maximum sentence of six months for each conviction, which if run consecutively would result in a sentence of months' imprisonment. See 36 C.F.R. § 1.3; 18 U.S.C. § 1865(a).

16

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Judgment of the Magistrate Judge is hereby **AFFIRMED**.

The Clerk of Court is **DIRECTED** to provide copies of this Order to counsel for the Defendant, counsel for the Government, and the United States Marshal's Service.

**IT IS SO ORDERED**.

Signed: August 16, 2022

Martin Reidinger
Chief United States District Judge